This is an unusual case. Ten short paragraphs contain the closed universe of a stipulated statute. In those ten paragraphs, we have two definite facts. There was no commercial sex act, and two, that the channels of interstate commerce, the only thing invoking federal jurisdiction was the advertisement on Craigslist. From those two pivotal facts come really the questions for this court. Whether or not 1591 demands a commercial sex act. We've abundantly briefed the issue. We've brought in an amicus. You have done a lot for that, but I guess I remain skeptical about your argument about the future passive voice will be caused to engage because it means it hasn't happened yet, which makes me begin by thinking that the statute focuses on the recruitment and the plan for the person so recruited. I have trouble reading the future passive voice as anything but a statement of, it is my plan that this thing is going to happen in the future. To be honest, I debated whether I decided I'm going to. There are languages in the world that actually have a perfective mode for verbs, but there's no present perfective. There's only the past perfective. You finished it in the past, and there's the future perfective. You're going to finish it in the future. This is basically like a future perfective. I don't think it in any way means that you have to crystal ball and know what's going to happen. It just means you are stating that you are going to do this. This is what is going to happen. I think so read the statute. It's a pretty good fit for what Waring is doing with KV. There's a lot to unpack there. I agree with you that there are languages like that. I was a public school kid, so I never really learned those languages or the exact precision. Speaking about the Slavic languages, in particular Russian. That was going to be way off. Two, if you were to read it that way, then will be cause actually becomes just an afterthought. Not really. It's very significant that you recruit this person knowing that they've not attained the age of 18, and knowing that your plan for them, your intent is to have them force them, if you will, will be cause to engage. That means you're going to do some forcing, engage them in a commercial sex act. Even if, as it happened here, luckily enough it gets interrupted, you've already done everything that the statute describes. No, you haven't because you need to have that commercial sex act. No, you don't. You recruited them in a way that your intent for the future, for next year, is you're going to set them up in the commercial sex business. Your Honor, if you take out and will be caused, then you're right. You have that statute because it is to engage in a commercial sex act. If you strike out those words, and that's why I wrote with the strike out on page seven of the reply. I don't think, well, first of all, it's not our business to get rid of words that Congress put in, but will be cause to engage is just, I don't know if you've ever worked with legislative counsel on the Hill, but they do try to make sure that statutes are written in English, but they don't always achieve. Will be caused is a future tense. It is. It is a future tense. You think that between the time the recruitment happens and the time the commercial sex act takes place, the statute doesn't cover it. I guess the other circuits have not read it your way, and I'm having trouble reading it that way, too. It doesn't cover it because you actually need the culmination of that. Now, 1594 could. The culmination means it's not in the future anymore. It means it's already happened. Your reading destroys the future tense of the passive voice. Because when we read the passive voice, it's actually that it took place. No, it's not. Will be caused. In the future, this is going to happen. It's that we've elevated the actual action. We've elevated with the passive voice. You could say if you had a child who was about to start college, you could say, my daughter will be caused to begin school at the University of Illinois this fall, and you're very clear in your mind that this is going to happen. Now, it hasn't happened. Maybe she'll change her mind and decide to become a musician, but that's ... Sure. In the face of that uncertainty, though, we don't place criminal liability. But it's not uncertain. That's the point of the recruitment. If the point of the recruitment is to recruit for the purpose of, that's how the whole Mann Act is written. That's how many statutes are written. But they're not written this way. There's no other one in Title 18. No other uses will be caused or will be used other than 1591. The other point, Your Honor, is what does an attempt look like then? Have we taken an attempt to be a 10-year mandatory minimum as soon as wearing goes to her at the middle school basketball game and makes a proposition? But he's done much more than that. I mean, I certainly could imagine that you would say the recruitment is not complete by that time. And I'm actually going to make sure that this is correct before I call this to your attention, but I think there is another place. I don't know why Congress has to use the same vocabulary every time anyway, but ... Because it makes things certain so that people have notice. But they don't do that. We know that's not how legislatures work. This is the only time that comes up. Are you looking for 21 U.S.C. 842, Your Honor? No, I'm looking 18 U.S.C. section 924H. And 18 U.S.C. section 924H, this is one of these eternal statutes that goes on forever, says, whoever knowingly transfers a firearm knowing that such firearm will be used to commit a crime of violence shall be imprisoned. So the will be used is very similar to will be caused. It hasn't been used yet, but they know that it will be used to commit a crime of violence. So I think your argument has to apply to that statute too. I don't know if it does. I wasn't prepared on that one, so I'm embarrassed that I didn't know that one. But I think when you really read the amicus and you look at pages 11 through like 14, that's where it goes into the scientific evidence and where it is that the knowing ... But what reason is there to believe that the members of Congress, whoever it was who drafted this bill, had the kind of precise expertise that your amicus did? I happen to like linguists, but I found that essentially not helpful because I don't think it's real world use of words. It is in that the knowing, the knowing applies to both the reckless disregard of the fact that she's 18. If the girl looked like she was 15, but she was actually 19, you can't convict my client. Fine, yeah. And I actually think knowing that she will be caused to engage in the commercial sexual act, you just have to understand what future tense means. It's Yogi Berra. It's hard to make predictions, especially about the future. But we talk about the future all the time in fairly specific ways. And we always use will, or we use going to be, or we use the future it. Will becomes. But here we have knowing that's modifying both. And that's what I mean to do. I didn't recruit this girl to be a babysitter, or I didn't recruit this girl to work in my shop. I'm recruiting this girl for commercial sex. If that goes to the purpose, that goes to the first knowing, the knowingly entice, knowingly recruit. That is, you're not just the cab driver who's like, I don't know why I'm taking her. It's actually that you're intentional, you know what you're doing. When it comes to the second knowing, the second knowing is going to a particular fact, a fact that's true. That truth is that she's under 18. If that knowing modifies the fact that she's under 18, then that fact knowing, in that sense, also modifies knowing will be caused. But it will never be violated then, because the will be caused is always in the future. It's not, so when she is caused, it's not this statute. No, it is actually. But this statute is, when you get- It's a future tense. It's tomorrow. Then Campbell and every other case that's cited, then there wouldn't be a prosecution. It's once the human trafficking ring has been broken up. Once they go and they get the massage parlor and they take everybody out, boom, we have all the text messages, the emails. We know who is driving whom, and we know exactly what happened. That commercial sex act is the final act that triggers 1591. If we don't have that, then we have 1594 and attempt. That's the demarcation, because otherwise you're placing the attempt. And this indictment didn't mention 1594? It did not. It did not, and that's why I win. I win on, this is an attempt. Unless I disagree with you on the future passive voice. But even if you do, I still win on the Commerce Clause, because the Commerce Clause means anything. It's not that it just hangs out there, and we're just waiting for something that they might do. All of the statutes speak to, this is the way it's going to be read. It's knowingly inter-affecting interstate commerce that you've enticed, you've recruited, you've harbored, you've transported. Here we don't have that. We have an action separate from the recruitment, separate from the enticement, that can't trigger it, because the advertisement wasn't yet criminalized. So I get it. If you guys want to disagree on the linguist, and you guys are much smarter than I am, but the Commerce Clause is so dead dry, and it's the kind that says, this is what allows for a federal prosecution. Okay, okay, I think I get your point. I'm going to give you one minute after the government, but you have to sit down now. No questions? All right. I had one, but... Oh, sorry, go ahead. No, no, I'll... Taking the vignette we have here, the facts that we have here, Mr. Budden, might not just that have been in the mind of the legislatures when creating... I understand your Commerce Clause argument, but from the language, might not that have been exactly what they were trying to capture as a criminal offense? I don't believe so for three reasons. First, it's in Chapter 77, and that's all peonage, slavery, transporting of slave ships. And if you look there, if you're careful, all of those don't have a Commerce Clause nexus. And the reason they don't is because they're actually invoked under the 13th Amendment. It's like, we don't have to. Guess what? States, you've allowed us to do this. Second, they were looking to break up human trafficking, something akin to what we think of the 13th Amendment. This has been going on since its world's oldest profession. And so I don't think this was the kind of thing that the people of Superior were like, oh, man, I just wish the federal government would teach us how to prosecute prostitution and pandering. The state of Wisconsin has been doing this since 1848. And the third reason, Your Honor, is would a legislature actually stand up and say, you know what, I want Eugene Waring to get off? No. Never would. But was the legislature trying to come together to combat human trafficking, to have international treaties to deal with low-level prostitution? I don't believe they were. But you didn't make an argument under Bond. Man, did I? I made it in the district court, and it was so laughed at, and I really wanted to focus on my two bets. Because, you know, you never know what you're going to have. And I had a really good Bond argument. I appreciate that, Your Honor. I thought I made the Tenth Amendment because I feel a little vindicated right now. I wanted to all in on the Tenth Amendment in the district court. And I said, all right, I got an amicus. I'm going all in. I got the Commerce Clause. I'm going all in. And I thought those two would be enough. Now, if you guys want to reach that because you can reverse anything in the record, the Tenth Amendment is right there for you. But it really does speak to the fact that this is what they were looking at. They weren't looking at local prostitution. I know you're very eloquent, but you didn't listen. She just said that's enough. Oh, I was trying to address the last question. Thank you, Your Honor. I appreciate that. I think we're good. Ms. Altman. Thank you, Your Honor. Good morning. May it please the Court, my name is Elizabeth Altman, and I represent the United States in this case. The government doesn't disagree that 1591 may be perhaps inartfully crafted, that there may have been a better way to write it, but that's not the question for today. The question for today, or at least the first question for today, is whether the statute as written requires a commercial sex act before there can be a conviction. And on this point, the statute is crystal clear because it is written in the future tense, as has just been discussed. A commercial sex act simply cannot be required. All of the other circuits that have looked at this question, the 5th, the 6th, the 8th, the 9th, and the 11th, they've all found exactly that. And I submit that this Court should join them. The second question for today is whether or not the defendant's actions as a whole were intereffecting interstate commerce. I take Mr. Bugney's point as though that you need to wait and see, I guess. I'll rephrase. You can recruit the minor, somebody you know who's a minor, and if at the end of the day, by the time the indictment comes down, the minor has been forced into a commercial sex act, then the statute is violated, but not otherwise. We disagree, obviously. I think reading it that way will be caused out of the statute. We don't want kids to have to engage in a sexual act to be able to charge a statute. We want to stop actions from occurring. We want to be able to charge people in stings and undercover operations and girls like this victim who said, no, I'm not going to do this. But it requires us to read the words will be caused as something like, and my plan is to force this person to do these things. Absolutely. My very firm plan is to cause this person. What was in the defendant's mind at the time he recruited, at the time he harbored, at the time he provided, all of those things, could they have used with the intent to? Maybe that would have been a better way to say it. Why didn't the government charge 1594 as well? We thought about it. Without that charge, I'm not sure that that's on the table for us. It may not be on the table for you, but I think it's our position that should this court vacate this conviction, we can still charge him with it and we might be in the same situation. We read the case law, and the case law said we have a conviction of 1591 when this happens. We thought about attempt. We called our people in D.C. and said, is this attempt or is this 1591? And they said it's 1591. And we agree with that. The action verbs are the recruiting, the harboring, the enticing. Those things all happened. And that's what the crime is. Yes, there has to be the intent to engage in a commercial sex act. Well, and you had to prove somehow that the will be caused to engage in a commercial sex act. I mean, in this instance, obviously, he takes her to the apartment. He tries her out, more or less. He has a couple of clients that fall through. Correct. Posts her online, all of those things. We know his intent. And so it was our position that that was the correct charge. Well, right, the intent or plan or something. So what about Mr. Bugney's argument that the recruitment, the active verb in all of this, has to be in interstate commerce and just posting her on Craigslist is available isn't enough? Once you get the Craigslist, obviously you have interstate commerce. Well, he provided her on Facebook. I mean, the indictment doesn't just ledge recruitment, as indicated in the defendant's brief. The indictment alleges recruited, enticed, harbored, transported, provided, obtained, and maintained by any means. So the minute he puts her on Facebook, he is providing her to the public. Here she is. Come get her if you want to. But why is the statute amended later then to include advertisement? Is this just a clarifying amendment? Because it sounds like you're saying it really doesn't add anything. I think it also added people to include people who, the Johns, the people who used the victims. And I don't think that advertising necessarily added much. All of the cases that talk about posting on Facebook were before the advertising was added to the statute. This was Craigslist, actually. Craigslist. I'm sorry. Craigslist. Yes. The prior case was Facebook. I'm sorry. So even if you read it narrowly, which I don't think you need to do. I mean, the jury instructions tell us that the offense must occur in interstate commerce. Courts have told us that the offense must occur in interstate commerce. And the statute itself says, the 22 U.S.C. 7101 B-12, says trafficking in persons substantially affects interstate and foreign commerce. So we have the whole offense that affects interstate commerce. But even if you do want to parse it out, by posting her on Craigslist, he was putting her out there. He was making her available. One part of the scheme involved the use of interstate commerce, and that was enough. He doesn't recruit her in interstate commerce. He does not recruit her in interstate commerce. It's all in person. That is true. Absolutely true. But we also have the use of a hotel. And I would submit courts can take judicial notice that hotels affect interstate commerce. We have all of the actions that took place at a hotel. We did make that argument below. And he was communicating with someone on Facebook, again, or on e-mail. E-mail, yeah. In the apartment, saying, you know, why don't you come meet up with her? So it's pretty clear there were multiple uses or multiple ways interstate commerce was affected. The one thing I want to say about the amicus brief and this knowing, this strict sense of knowing that they talk about, they talk about this strict sense of knowing, and they equate it to the victim's age as well. But the statute tells us that knowing the victim's age isn't so strict. 1591C tells us there are some times when you don't have to know the victim's age. Well, this statute says knowing that the person has not attained the age of 18 years. That doesn't sound ambiguous to me. Sometimes you don't need to know, such as, you know, when you use a minor to sell your drugs. But this particular statute wants you to know. But under sub C of the same statute, it says, in a prosecution under sub A1 in which the defendant had reasonable opportunity to observe the person recruited or solicited, the government need not prove the defendant knew. Well, that's kind of ostrich behavior. I mean, ostriching is a substitute for knowledge in general. But my point is I don't disagree with that, that he talks about this strict sense of knowing that you must absolutely know. And the statute itself says or should know. It's a little stronger than or should know. It's ostrich. Fair enough, but not strict. And the other thing I would say with regard to that is how can a defendant ever know ever what happened or that a commercial sex act occurred unless he has film or unless he has video or something like that? I mean, you could have him drop a victim off at a hotel where she's supposed to meet with the John. The John says, you know, she says, I don't want to do this, but he's going to beat me up if you don't give me some money. The John says, OK, fine, here's some money. They both go and they say, yes, it happened. The defendant thinks it did happen and it didn't. And in that case, you know, according to the reading of the strict sense of knowing, he would have violated the statute. But it just shows that this strict sense of knowing and this clarity that you could absolutely know something is an illusion, particularly when you look at this statute and how it's written. Unless the court has further questions, I would respectfully request that the court affirm his conviction. Seeing none, that would be fine. One minute and one minute only, Mr. Bogni. Thank you. I appreciate that. You have a large hook. I really do. So the whole argument, look, this was a 1591. It wasn't an attempt. This was an attempt. There wasn't the Commercial Sex Act. To read attempt to just be the proposition would be to create a huge federal felony for the mere propositioning of someone. That's what this would be creating. And going back to bond, bond two, that, you know, like we look to the penalties and we say, would they want to interfere with that kind of structure, with this kind of heavy penalty of a 10-year mandatory minimum, just for that distasteful behavior, especially if the girl says no. Two, there's no definition of provided. There's no definition in the statute that wasn't argued below. For the Craigslist posting to be provided, that's not it. That was an advertisement. I mean, there's a reason they amended it. We know that this is an advertisement. It advertises for services. We wouldn't say the Craigslist posting provides. I mean, that's just a weird use of the word provides. How do we know something happened? It's not that something happened, okay, and we're going to look for the purpose of the act. I will honor that. Thank you, Your Honor. Thank you very much. We will take the case under advisement. Thanks to both counsel.